01

02

03

04

05

06

07

08

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

09

10

11

12

13

14

15

| | |
|---|---|
| JAMES DETHERAGE, )<br>        Plaintiff, )<br>    v. )<br>JO ANNE B. BARNHART, Commissioner )<br>of Social Security Administration, )<br>        Defendant. )<br>_____ ) | Case No. C05-0864-JLR-JPD<br><br>REPORT AND RECOMMENDATION |

16        Plaintiff James Detherage proceeds through counsel in his appeal of a final decision of

17 the Commissioner of the Social Security Administration (the "Commissioner").  The

18 Commissioner denied plaintiff's applications for disability insurance benefits ("DIB") and

19 Supplemental Security Income under Titles II and XVI of the Social Security Act after a

20 hearing before an administrative law judge ("ALJ").  For the reasons set forth below, the Court

21 recommends that the ALJ's decision be affirmed and this case be dismissed.

22                                    I.  FACTS AND PROCEDURAL HISTORY

23        Plaintiff is a fifty-six-year-old man with a high-school education.  AR 55, 74.  He served

24 in the United States military for two years, and has over thirty years of work experience as an

25 autobody repair technician.  AR 55, 69, 77-78.  On September 10, 2002, plaintiff filed

26 applications for DIB and SSI.  AR 55, 165.  He alleged disability beginning on April 15, 2001,

REPORT AND RECOMMENDATION
PAGE -1

01 as a result of emphysema.  AR 55, 68, 165.  Plaintiff's applications were denied initially and on

02 reconsideration.  AR 29-32, 34-36, 171.

03      Plaintiff requested a hearing, and on December 4, 2004, an ALJ issued an opinion

04 finding that plaintiff was not disabled.  AR 11-22, 177-91.  Specifically, the ALJ determined that

05 plaintiff had no exertional limitations and that he was capable of performing other work in the

06 national economy.  AR 21-22.  Plaintiff appealed his decision, but the Appeals Council denied

07 his request for review.  AR 5-7.  The ALJ's December 4, 2004, decision therefore became the

08 Commissioner's final decision for purposes of this Court's review.  On May 9, 2005, plaintiff

09 filed this civil suit challenging the Commissioner's decision.  Dkt. No. 1.

10 II.  JURISDICTION

11      The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. §§ 405(g)

12 and 1383(c)(3).

13 III.  STANDARD OF REVIEW

14      The district court may set aside the Commissioner's denial of social security benefits

15 when the ALJ's findings are based on legal error or not supported by substantial evidence in the

16 record as a whole.  *See* 42 U.S.C. § 405(g); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir.

17 1996) (internal citations omitted).  Substantial evidence is defined as more than a mere scintilla

18 but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as

19 adequate to support a conclusion.  *Smolen,* 80 F.3d at 1279.  The ALJ is responsible for

20 determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.

21 *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Where the evidence is susceptible to

22 more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.

23 *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Smolen*, 80 F.3d at 1292).

24      If the court determines that the ALJ erred, the court has discretion to remand for further

25 proceedings or to award benefits.  *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).

26 The court may direct an award of benefits where "the record has been fully developed and

REPORT AND RECOMMENDATION
PAGE -2

01   further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*,

02   298 F.3d 1072, 1076 (9th Cir. 2002).

03         Such a circumstance arises when: (1) the ALJ has failed to provide legally
        sufficient reasons for rejecting the claimant's evidence; (2) there are no

04         outstanding issues that must be resolved before a determination of disability can
        be made; and (3) it is clear from the record that the ALJ would be required to

05         find the claimant disabled if he considered the claimant's evidence.

06   *Id.* at 1076-77.

07                IV.  EVALUATING DISABILITY

08        As the claimant, Mr. Detherage bears the burden of proving that he is disabled within the

09   meaning of the Social Security Act. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

10   Disability is defined as the "inability to engage in any substantial gainful activity by reason of any

11   medically determinable physical or mental impairment, which can be expected to result in death,

12   or which has lasted or can be expected to last for a continuous period of not less than twelve

13   months[.]"  42 U.S.C. § 423(d)(1)(A).  A claimant is disabled only if his impairments are of

14   such severity that he is not only unable to do his previous work, but cannot, considering his age,

15   education, and work experience, engage in any other substantial gainful activity existing in the

16   national economy.  *See* 42 U.S.C. §§ 423(d)(2)(A), 1382(c)(a)(3)(B); *see also Tackett v. Apfel*,

17   180 F.3d 1094, 1098 (9th Cir. 1999).

18        The Social Security regulations set out a five-step sequential evaluation process for

19   determining whether a claimant is disabled within the meaning of the Social Security Act. *See*

20   20 C.F.R. §§ 404.1520, 416.920.  At step one, the claimant must establish that he is not

21   engaging in any substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the

22   claimant does so, then at step two, the claimant must establish that he has one or more

23   medically-severe impairments, or combination of impairments, that limit his physical or mental

24   ability to do basic work activities.  If the claimant does not have such impairments, he is not

25   disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe

26   impairment, the Commissioner moves to step three to determine whether the impairment meets

REPORT AND RECOMMENDATION
PAGE -3

01    or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d),

02    416.920(d).  A claimant who meets one of the listings for the twelve-month-duration

03    requirement is disabled.  *Id.*

04         When the claimant's impairment neither meets nor equals one of the impairments listed

05    in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

06    residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the

07    Commissioner evaluates the physical and mental demands of the claimant's past relevant work

08    to determine whether the claimant can still perform that work.  *Id.*  If the claimant is not able to

09    perform his past relevant work, then the burden shifts to the Commissioner at step five to show

10    that the claimant can perform some other work that exists in significant numbers in the national

11    economy, taking into consideration the claimant's RFC, age, education, and work experience.

12    20 C.F.R. §§ 404.1520(f), 416.920(f); *Tackett*, 180 F.3d at 1099-100.  If the Commissioner

13    finds the claimant is unable to perform other work, then the claimant is found disabled and

14    benefits may be awarded.

15                                V.  DECISION BELOW

16         On December 4, 2004, the ALJ issued a decision denying plaintiff's request for benefits

17    finding:

18        1.     The claimant meets the non-disability requirements for a period of
                    disability and Disability Insurance Benefits set forth in Section 216(I) of

19                     the Social Security Act and is insured for benefits through December 31,
                    2003.

20

21        2.     The claimant has not engaged in substantial gainful activity since the
                    alleged onset of disability.

22        3.     The claimant's mild obstructive pulmonary impairment is a "severe"
                    impairment, based upon the requirements in (20 CFR §§ 404.1520 and

23                     416.920).

24        4.     This medically determinable impairment does not meet or medically equal
                    one of the listed impairments in Appendix 1, Subpart P, Regulation No.

25                     4.

26

REPORT AND RECOMMENDATION
PAGE -4

01     5.     The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6.     The claimant has no exertional limitations.  Non-exertionally, he needs to avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation as well as hazards such as working around machinery or at unprotected heights.

7.     The claimant is unable to perform any of his past relevant work (20 CFR §§ 404.1565 and 416.965).

8.     The claimant is an "individual closely approaching advanced age" (20 CFR §§ 404.1563 and 416.963).

9.     The claimant has a "high school (or high school equivalent) education" (20 CFR §§ 404.1564 and 416.964).

10.     The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR §§ 404.1568 and 416.968).

11.     The claimant has no exertional limitations (20 CFR §§ 404.1545 and 416.945).

12.     Considering the range of work at all levels that the claimant is still functionally capable of performing, in combination with his age, education, and work experience, and using section 204.00 of the Medical-Vocational Guidelines as a framework for decision-making, the claimant is not disabled.

13.     The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

AR 21-22.

## VI.  ISSUES ON APPEAL

The plaintiff has taken a scatter-shot approach to this appeal.  It appears that the primary assignments of error can be summarized as follows:

A.     Did the ALJ properly evaluate the conflicting medical opinions?

B.     Did the ALJ utilize the appropriate standard for evaluating subjective symptom testimony?

C.     Did the ALJ err in his credibility analysis?

REPORT AND RECOMMENDATION
PAGE -5

01         D.      Did the ALJ erroneously determine plaintiff's age?

02         E.      Did the ALJ err by failing to obtain vocational expert testimony?

03

## VII. DISCUSSION

04

A.      <u>The ALJ Did Not Err in His Evaluation of the Conflicting Medical</u>

05             <u>Opinions.</u>

06         The ALJ found that plaintiff had no exertional limitations, but determined that he had

07 certain environmental limitations. AR 21. Specifically, he adopted Dr. Hoskins' opinion and

08 found that plaintiff had to avoid environments with "concentrated fumes, odors, dusts, gases,

09 and poor ventilation as well as hazards such as working around machinery or at unprotected

10 heights." AR 21. The ALJ also stated that no other "opinions from a treating or examining

11 physician indicat[e] that the claimant is disabled or even has limitations greater than those

12 determined in this decision." AR 19.

13         As an initial matter, plaintiff argues that the latter statement is inaccurate because the

14 opinions of Drs. Zimmerman and Lee suggest more restrictive limitations. Dkt. No. 13. This

15 argument ignores the fact that prior to this statement, the ALJ rejected the opinions of Drs.

16 Zimmerman and Lee. Te statement was simply the ALJ's attempt to identify and evaluate the

17 remaining conflicting medical evidence and resolve ambiguities in the record. *Andrews*, 53 F.3d

18 at 1039. While the ALJ's statement could have been more precise, it does not warrant reversal.

19

20         Ultimately, plaintiff's argument rests not on whether this statement is accurate, but

21 rather upon his view that the ALJ should have preferred the opinions of Drs. Zimmerman and

22 Lee to those of Drs. Chalaka and Hoskins. The ALJ rejected the opinions of Drs. Zimmerman

23 and Lee, because he found them to be inconsistent with what he determined were more reliable

24 medical opinions. AR 16-17.

25         Dr. Zimmerman diagnosed plaintiff with nicotine dependency and emphysema, which he

26 considered a marked impairment that rendered plaintiff "severely limited," unable to stand, walk

REPORT AND RECOMMENDATION
PAGE -6

01  or lift even two pounds.  AR 146-47.  Dr. Lee evaluated plaintiff on June 24, 2003, and

02  diagnosed him with chronic obstructive pulmonary disease of moderate severity.  AR 158.  She

03  opined that he could perform sedentary work only.  AR 158-59.  Both doctors recommended

04  plaintiff see a pulmonologist.  AR 147, 159.

05         Upon Dr. Lee's referral, Dr. Chalaka, a pulmonary specialist, performed a pulmonary

06  function test and found plaintiff to have "mild obstructive pulmonary impairment, with mild-to-

07  moderate impression in spirometry after bronchodilator therapy[.]"[1]  AR 160.  Other than to

08  characterize plaintiff's condition as "mild-to-moderate," Dr. Chalaka assigned no functional

09  limitations.  On January 28, 2003, Dr. Hoskins reviewed plaintiff's medical records, including

10  his pulmonary tests, chest x-rays, and the treatment notes from Drs. Zimmerman and Lee.  *See*

11  AR 156.  Upon review of these records, he concluded that plaintiff had no exertional limitations,

12  but that he should avoid working around concentrated fumes and hazardous equipment.  AR

13  153-56.  The ALJ adopted Dr. Hoskins' opinion, and in doing so, rejected the impairment

14  assessments of Drs. Zimmerman and Lee.

15         An ALJ may reject the controverted medical opinion of an examining physician only

16  when he provides specific and legitimate reasons that are supported by the record.  *Moore v.*

17  *Comm'r*, 278 F.3d 920, 924 (9th Cir. 2002) (quoting *Lester*, 81 F.3d at 830-31).  The ALJ  met

18  that standard.  The ALJ determined that the assessments of Drs. Zimmerman and Lee were

19  inconsistent with the objective testing performed by Dr. Chalaka.  AR 16-17.  Moreover, Dr.

20  Zimmerman assessed the plaintiff as severely limited, and unable to stand, walk, or lift at least

21  two pounds.  AR 147.  This assessment is at odds with statements the plaintiff gave to Dr.

22  Strangland that he felt better because he was not longer doing auto-body work and that he

23  could walk a mile on flat ground.  AR 16.

24

25  _____

26  [1]Dr. Chalaka performed an earlier pulmonary function test that produced similar
    results:  "mild obstructive pulmonary impairment without significant improvement in
    spirometry after bronchodilator therapy."  AR 131.

REPORT AND RECOMMENDATION
PAGE -7

01    Plaintiff appears to argue that the ALJ erred by according Dr. Hoskins' opinion too

02 much weight. Dkt. No. 13. He argues that the opinion was entitled to less weight because Dr.

03 Hoskins is a non-examining state-agency physician and is not a pulmonologist. *Id.*

04    The opinions of non-examining physicians are generally entitled to less weight than

05 treating or examining physicians. *See Lester*, 81 F.3d at 831; 20 C.F.R. §§ 404.1527,

06 416.927(d). ALJs must evaluate these opinions and explain the weight they place on them. 20

07 C.F.R. §§ 404.1527(f), 416.927(f); SSR 96-6p. In cases where non-examining doctors have

08 access to better records than other physicians, their opinions may be entitled to greater weight.

09 SSR-96-6. Here, the ALJ set forth an evaluation of the medical evidence, including Dr.

10 Hoskins' report, and concluded that Dr. Hoskins' opinion was consistent with the evidence

11 overall. This determination falls within the ALJ's discretion to weigh and evaluate the medical

12 evidence. *Batson*, 359 F.3d at 1196. Additionally, the fact that Dr. Hoskins was not a

13 pulmonologist does not require reversal. Dr. Hoskins properly relied on, among other things,

14 the reports of Dr. Chalaka, who was a pulmonologist.[2] AR 156; *see also* SSR-96-6p

15 (indicating reliance on specialists' medical report may justify ALJ in preferring non-examining

16 opinions over treating opinions).

17    The role of this Court is limited. Where the evidence is susceptible to more than one

18 rational interpretation, the Commissioner's conclusion must be upheld. *Thomas*, 278 F.3d at

19 954. In this case, the Court cannot conclude that the only rational interpretation of the medical

20 evidence is that offered by the plaintiff. The Commissioner's decision is supported by

21 substantial evidence.

22    B.    The ALJ Did Not Err By Citing *Nyman v. Heckler*.

23    Plaintiff argues that the ALJ erroneously relied on *Nyman v. Heckler*, 779 F.2d 528,

24 531 (9th Cir. 1985), to support his evaluation of plaintiff's subjective-symptom testimony.

25 ─────────────────────

26    [2] Neither Dr. Zimmerman nor Dr. Lee, both of whom plaintiff prefers, were
pulmonologists.

REPORT AND RECOMMENDATION
PAGE -8

01  Dkt. No. 13.  Plaintiff claims that *Nyman* is no longer good law, because the concurring

02  opinion in *Bates v. Sullivan,* 894 F.2d 1059 (9th Cir. 1990), which relied on *Nyman*, was

03  overruled.  *Id.*  This argument is misleading.  The Ninth Circuit has held that the concurring

04  opinion in *Bates* misinterpreted *Nyman*, not that the holding in *Nyman* itself was infirm.  *See*

05  *Bunnell v. Sullivan*, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc).  *Nyman* still appears to be

06  good law and, more importantly, is consistent with recent Ninth Circuit caselaw on credibility

07  analysis standards.  *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (internal

08  citations omitted).  The ALJ's citation to *Nyman* cannot serve as a basis for reversal of this

09  case.  AR 17.

C.    The ALJ Did Not Err in His Credibility Analysis of Plaintiff's
      Subjective- Symptom Testimony.

Plaintiff also attacks the ALJ's analysis of his credibility on several points.  Dkt. No. 13.

He raises at least four assertions of error and argues that substantial evidence does not support

the ALJ's decision as a whole.  *Id.*  Each argument is discussed below.

1.    The ALJ Did Not Erroneously Fail to Consider Plaintiff's
      Inability to Afford Treatment.

Plaintiff argues that the ALJ's credibility analysis was flawed, because it failed to

consider the fact that plaintiff could not afford prescribed treatment.  Dkt. No. 13.  For

instance, plaintiff said that he declined a chest x-ray and pulmonary function test because of

cost.  AR 130.  However, plaintiff had several pulmonary tests and the chest x-ray, though the

latter does not appear in the record.  AR 131-52, 156, 160-63.  This was not the "treatment"

to which the ALJ was referring, but that plaintiff continued to smoke at least a pack of

cigarettes per day, despite the fact he had been diagnosed with emphysema.  AR 18.

Plaintiff also testified he could not afford a nicotine patch to help him quit smoking.

AR 188.  In light of the fact that plaintiff could afford an inhaler, one to two packs of cigarettes

a day, three to four six packs of beer a week, and a fifth of whiskey for the weekend (AR 16),

it was certainly within the discretion of the ALJ to disbelieve the plaintiff's statements that he

REPORT AND RECOMMENDATION
PAGE -9

01  could not afford a nicotine patch.  Additionally, plaintiff's doctors did not direct him to use a

02  nicotine patch, but directed him to quit smoking.  AR 130.  Although it is true that an ALJ may

03  not rely upon a claimant's failure to follow treatment when the record demonstrates that he

04  cannot afford it, quitting smoking is not the type of cost-prohibitive treatment this rule

05  contemplates.  *See Regennitter v. Comm'r of Soc. Sec. Admin.*,166 F.3d 1294, 1296-97 (9th

06  Cir. 1999) (inability to afford frequent doctor's examinations and pain medication); *see also*

07  *Gamble v. Chater*, 68 F.3d 319, 321-22 (9th Cir. 1995) (inability to afford prosthetic device);

08  SSR96-7p (directing ALJs to consider whether a claimant can afford or have access to medical

09  care).

10  

2.      The ALJ Did Not Improperly Deny Benefits Based on
                Plaintiff's Failure to Follow Prescribed Treatment.

11
12          According to plaintiff, the ALJ implicitly relied upon 20 C.F.R. § 404.1530 (and 20

13  C.F.R. § 416.930) to reject plaintiff's application because he had failed to follow treatment.

14  Dkt. No. 13.  He argues, that the ALJ did not satisfy the requirements for denying benefits

15  based on the regulation.  *Id.*  Defendant argues that the ALJ properly determined that plaintiff's

16  failure to quit smoking "undercut his claim that he was disabled by his symptoms," and that the

17  denial was not based on that section alone.  Dkt. No. 14.

18          Plaintiff's argument is not persuasive.  The ALJ found plaintiff not disabled based on 20

19  C.F.R. Pt. 404, Subpt. P. App. 2, § 204, and not his failure to follow treatment.  AR 21.

20  Rather, the ALJ discredited plaintiff's testimony, in part, because of his "[f]ailure to stop

21  smoking."  AR 18.  He found plaintiff's failure to follow doctors' advice to quit smoking as

22  evidence that tended to impeach his credibility.  *Id.*  The ALJ cited *Kelley v. Barnhart*, 372

23  F.3d 958, 961 (8th Cir. 2004), *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001), and

24  *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996), for the proposition that "[f]ailure to

25  follow treatment recommendations reflects on the credibility of impairments."  AR 18.  The

26  Eighth Circuit cases and Ninth Circuit cases are similar in holding that plaintiff's failure to seek

treatment, or to adequately explain the failure to do so, is a proper reason for discrediting a

REPORT AND RECOMMENDATION
PAGE -10

01  plaintiff's subjective-symptom testimony.  *Burch*, 400 F.3d at 681; *Fair v. Bowen*, 885 F.2d

02  597, 603 (9th Cir. 1989).

03              3.      The ALJ Did Not Err By Failing to Consider the
                        Difficulty of Quitting Smoking.
04

05      Plaintiff states that the ALJ's credibility analysis was flawed because it failed to

06  consider adequately the difficulty of quitting smoking.  Dkt. No. 13.  Plaintiff cites no

    controlling authority for this proposition, and has not shown that the ALJ erred on this point.
07
                4.      The ALJ Provided Appropriate Reasons For Finding
08                      Plaintiff's Daily Activities Inconsistent With His
                        Impairment.
09

10      Plaintiff also challenges the ALJ's determination that his daily activities were

11  inconsistent with his claimed disability.  Dkt. No. 13.  He argues that the ALJ's assertion that

12  his allegedly limited daily activities cannot be verified is inadequate, because the ALJ must

13  evaluate both objective and non-objective medical evidence.  *Id.*  Plaintiff argues that the ALJ

14  failed to provide adequate explanation for why his daily activities were inconsistent with his

    disability.  *Id.*
15
        Once a claimant produces medical evidence of an underlying impairment, the ALJ may
16
    not discredit the claimant's testimony as to the severity of symptoms solely because they are
17
    unsupported by objective medical evidence.  *Bunnell*, 947 F.2d at 343; *Reddick v. Chater,* 157
18
    F.3d 715, 722 (9th Cir. 1998) (internal citations omitted).  With no positive evidence showing
19
    that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for
20
    rejecting the claimant's testimony.[3]  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.  When
21
    evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not
22

23  _____

24      [3]The ALJ may consider "ordinary techniques of credibility evaluation" including a
    claimant's reputation for truthfulness, inconsistencies in their testimony, or between their
25  testimony and conduct, daily activities, work record, and testimony from physicians and third
    parties concerning the nature, severity, and effect of the symptoms of which the claimant
26  complains.  *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792
    (9th Cir. 1997) (internal citations omitted).

REPORT AND RECOMMENDATION
PAGE -11

01  credible and what evidence undermines the claimant's complaints; general findings are

02  insufficient.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

03          The ALJ provided an appropriate basis for concluding that plaintiff's activities were

04  inconsistent with his alleged impairment.  First, he observed that plaintiff's claimed activities

05  were difficult to verify objectively.  AR 17.  While this by itself does not satisfy the *Smolen*

06  standard, the ALJ also found that even if plaintiff's daily activities were as he stated, they were

07  inconsistent with the alleged degree of impairment.  AR 18.  These included failure to use

08  Albuterol during the day, his daily activities of cooking, cleaning, vacuuming the house, and

09  walking to the store.  AR 18.  He also stated that if the impairment was as severe as claimed by

10  the plaintiff, the medical record would be substantially different.  AR 19.

11          This case is similar to *Burch v. Barnhart, supra*.  In *Burch*, the plaintiff alleged

12  primarily an obesity-based disability.  The ALJ rejected the plaintiff's pain testimony, citing the

13  plaintiff's daily activities, which suggested to the ALJ that the plaintiff was functional. The

14  Ninth Circuit held that the evidence of daily activities could also support the plaintiff's claims

15  of disability.  However, the ALJ's interpretation was also rational, and held "we must uphold

16  the ALJ's decision where the evidence is susceptible to more than one rational interpretation."

17  Id. at 680-81.  Just as in *Burch,* the plaintiff's activities and lack of treatment can be subject to

18  more than one rational interpretation.  In this case, as in *Burch*, the ALJ's interpretation of the

19  evidence must be upheld.

20          D.      The Issue of Plaintiff's Age Does Not Warrant Remand.

21          Plaintiff argues that the ALJ erred by determining that plaintiff was a person "closely

22  approaching advanced age," rather than a "person of advanced age."  Dkt. No. 13.  He claims

23  that this finding was accurate when plaintiff applied for benefits, but not at the time of the

24  hearing.  *Id*.

25          The ALJ's decision is unclear as to what age category he applied.  The body of the

26  decision correctly identifies that plaintiff was fifty-six years old, and that this qualifies him as a

REPORT AND RECOMMENDATION
PAGE -12

01   "person of advanced age."  AR 15, 20; *see also* 20 C.F.R. §§ 404.1563, 416.963 (describing

02   age categories).  The Findings section, however, incorrectly states that plaintiff is an individual

03   "closely approaching advanced age."  *Id.* at 21.  The section the ALJ relied upon to render his

04   decision, 20 C.F.R. Pt. 404, Subpt. P. App. 2, § 204, applies to claimants with no exertional

05   limitations and does not apply an age category.  Because the ALJ's determination that plaintiff

06   had no exertional limitations is supported by substantial evidence, any error regarding the

07   plaintiff's age is harmless.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F. 3d 1190, 1197

08   (9th Cir. 2004).

09              E.    <u>The ALJ Did Not Err By Not Calling a Vocational Expert</u>.

10              Plaintiff argues that the ALJ erred by failing to call a Vocational Expert ("VE") to

11   determine whether he could perform other jobs that exist in significant numbers in the national

12   economy.  Dkt. No. 13.  The ALJ may satisfy his burden at step five either by calling a VE to

13   testify or by reference to the Medical-Vocational Guidelines (the "Grids").  *Tackett,* 180 F.3d

14   at 1100-01.  When a plaintiff has significant non-exertional impairments, the ALJ cannot rely

15   on the Grids.  *See Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *see also* SSR

16   85-15 (non-exertional impairments are "medically determinable and cause a non-exertional

17   limitation of function or an environmental restriction").  This is because the Grids are based on

18   strength factors only.  *Holohan*, 246 F.3d at 1208-09.

19              The ALJ found plaintiff to have no exertional limitations, but determined that he had

20   limitations on the types of environments in which he could work.  AR 21.  For instance, he

21   indicated that plaintiff could not be exposed to concentrated fumes, odors or dusts, and that he

22   should avoid hazards such as machinery and unprotected heights.  AR 19.  These non-

23   exertional limitations are not contemplated by the Grids, but their impact on plaintiff's ability to

24   work is "minimal because most job environments do not involve great . . . amounts of dust,

25   etc."  SSR 85-15.  Thus, the ALJ's finding of non-disability here does not necessarily require

26   reversal.

REPORT AND RECOMMENDATION
PAGE -13

01  Although plaintiff allows that the foregoing result may be proper, he argues that the

02  ALJ's additional limitation — that plaintiff avoid "machinery or unprotected heights" — is not

03  consistent with the use of the Grids.  Dkt. No. 13.  By way of example, SSR 85-15 states that

04  a person with a seizure disorder who has a non-exertional limitation to avoid "unprotected

05  elevations" and "dangerous moving machinery" will not have a meaningful impact on their

06  ability to perform work.  SSR 85-15.  Plaintiff appears to argue that the ALJ's decision was

07  deficient, because he stated that plaintiff needed to avoid working around "machinery" rather

08  than "dangerous machinery."  Dkt. No. 13.

09  Plaintiff's reading of SSR-85-15 is too narrow.  The above-cited example stands for the

10  proposition that an ALJ need not call a VE when certain environmental limitations would not

11  have any meaningful impact on the availability of jobs that a claimant could perform.  Here,

12  plaintiff was diagnosed with emphysema, and the record repeatedly indicates that industrial

13  fumes and heavy machinery, such as diesel engines, impacted his breathing.  These are the

14  types of machines the ALJ was impliedly referring to in his decision.  AR 19, 181-88.  There is

15  no indication that pencil sharpeners, computers, blenders, or other common machines would

16  have any impact on him.  Although it may have been preferable for the ALJ to call a VE to

17  make this finding, the ALJ's failure to do so does not require reversal.

18  VIII.  CONCLUSION

19  For the reasons discussed above, the Court recommends that the ALJ's decision be

20  affirmed and this case be dismissed.  A proposed order accompanies this Report and

21  Recommendation.

22  DATED this 7th day of March, 2006.

23

24  JAMES P. DONOHUE
    United States Magistrate Judge

25

26

REPORT AND RECOMMENDATION
PAGE -14